**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YASMINE AKL | : |
| | : |
|       Plaintiff | : CIVIL ACTION |
| | : |
|   vs. | : |
| | : |
| PENNSYLVANIA STATE POLICE | : |
| TROOP K- DELAWARE COUNTY, | : NO. 16-CV-1096 |
| LT. ERIC J. TURK, STATION | : |
| COMMANDER, PENNSYLVANIA STATE | : |
| POLICE TROOP K, CPT. JAMES P. | : |
| RAYKOVITZ, COMMANDING OFFICER | : |
| PENNSYLVANIA STATE POLICE | : |
| TROOP K, TROOPER MATTHEW | : |
| GIBSON, PENNSYLVANIA STATE | : |
| POLICE, TROOP K, UNIDENTIFIED | : |
| TROOPER #1, PENNSYLVANIA STATE | : |
| POLICE TROOP K, and | : |
| UNIDENTIFIED TROOPER #2, | : |
| PENNSYLVANIA STATE POLICE, | : |
| TROOP K, DONIKA PLYKU, and | : |
| DOSHI PRIFTI | : |
| | : |
|       Defendants | : |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                  **September 22, 2016**

     This civil action is now before this Court for disposition of the Motion of Defendants Pennsylvania State Police Troop K - Delaware County, Lieutenant Eric J. Turk, Captain James P. Raykovitz, Trooper Matthew Gibson and Unidentified State Troopers #1 and #2 (the "Commonwealth Defendants") to Dismiss Plaintiff's Complaint in Part. For the reasons which follow, the motion

shall be granted.

## Factual Background

This case arose on the evening of June 28, 2015, at Plaintiff's home in Garnet Valley, Delaware County, Pennsylvania. On that evening, at approximately 6:10 p.m., Plaintiff, who was away from her residence attending an event in Princeton, New Jersey, received a phone call from her home security company advising her that there had been a break-in at her house. Plaintiff was further advised by her security company that when it had contacted the Pennsylvania State Police in response to the alarm, it was told that the State Police were on the scene and in fact were the ones who were inside the house. According to the complaint, Plaintiff then called the Pennsylvania State Police Troop K barracks in Media to tell them that she was on her way home and to ask that everyone who was inside the residence vacate the premises, but that the State Police refused to comply and hung up on her. Plaintiff subsequently learned through viewing the home surveillance video that all of the defendants, two of whom are private persons and three of whom are Pennsylvania State Troopers, broke into her home by smashing the glass out of her patio doors with a tire iron and took away a large quantity of her personal property, including cash, gold coins, computers, tablets, watches, earrings and other jewelry, coats, clothing and shoes, pots and pans, cameras, purses, rugs, Waterford and Lenox

2

glasses, plates and bowls, a coffee maker and shelving from her refrigerator.

Although it is not entirely clear from her pleading, it appears that Plaintiff is suing the Pennsylvania State Police, Lt. Turk, Capt. Raykovitz, Trooper Gibson and two unidentified state troopers in their official and individual capacities and Defendants Donika Plyku and Doshi Prifti under 42 U.S.C. §1983 for deprivations of her "right to protection from unlawful search and seizure of defendant's [sic] residence and property therein," "right to protection from criminally and unlawful destruction of [her] property," and "her use of her property without due process of law" in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States (Counts I, II, III and V), for "failure to fully and properly investigate the acts of Defendants" "in violation of Plaintiff's constitutional right to due process substantive and procedural as guaranteed under the 14th Amendment ... and as protected under ... §1983" (Count VI) and for "larceny" (Count VII).[1]  By this motion, the Commonwealth Defendants now move to dismiss the claims against them.

### Standards Applicable to Motions for Dismissal

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir. 2011).  In

---

[1]   There is no Count IV in the Complaint.

reviewing a challenged pleading, the courts are required to accept all well-pleaded factual allegations as true and draw all reasonable inferences in the non-movant's favor. Ebert v. Prime Care Medical, Inc., No. 14-2020, 2015 U.S. App. LEXIS 1843 at *4 (3d Cir. Feb. 5, 2015); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002).  In so doing, reliance is placed upon "the complaint, attached exhibits, and matters of public record."  Ebert, supra, (quoting Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007)).  Because Fed. R. Civ. P. 8(a)(2) requires a 'showing,' rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007); Renfro, supra.  Indeed, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct."  Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008)(quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949, 173 L. Ed. 2d 868 (2009).  Examination of the context of
the claim, including the underlying substantive law is therefore
necessary in order to properly assess plausibility.  <u>Renfro</u>, 671
F.3d at 321(citing <u>In re Insurance Brokerage Antitrust
Litigation</u>, 618 F.3d 300, 320, n. 18 (3d Cir. 2010)).

## Discussion

*A. Eleventh Amendment Immunity*

Defendants first assert that the Eleventh Amendment to the
U.S. Constitution[2] bars the Plaintiff's claims against the
Pennsylvania State Police Troop K - Delaware and all of the state
police officers in their official capacities.  We agree.

Long ago, "[o]ur Constitution established a system of 'dual
sovereignty between the States and the Federal Government' in
which the States 'retain a residuary and inviolable
sovereignty.'" <u>Lombardo v. Pennsylvania Department of Public
Welfare</u>, 540 F.3d 190, 194 (3d Cir. 2008)(quoting, *inter alia*,
<u>Gregory v. Ashcroft</u>, 501 U.S. 452, 457, 111 S. Ct. 2395, 115 L.
Ed. 2d 410 (1991) and <u>Alden v. Maine</u>, 527 U.S. 706, 715, 119 S.
Ct. 2240, 144 L. Ed. 2d 636 (1999)).  An important feature of
this sovereignty is state sovereign immunity.  <u>Id</u>.  Sovereign
immunity has been defined as "the privilege of the sovereign not

---

[2]  The Eleventh Amendment reads:

The Judicial power of the United States, shall not be construed to
extend to any suit in law or equity, commenced or prosecuted
against one of the United States by citizens of another State, or
by Citizens or Subjects of any Foreign State.

to be sued without its consent." <u>Virginia Office for Protection and Advocacy v. Stewart</u>, 563 U.S. 247, 253, 131 S. Ct. 1632, 1637, 179 L. Ed. 2d 675 (2011).  The concept is further embodied in the Eleventh Amendment which has been understood "to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty, ... and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention.'" <u>Blatchford v. Native Village of Noatak</u>, 501 U.S. 775, 779, 111 S. Ct. 2578, 2584, 115 L. Ed. 2d 686 (1991)(quoting, *inter alia*, <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890), <u>Welch v. Texas Dept. of Highways and Public Transportation</u>, 483 U.S. 468, 472, 107 S. Ct. 2941, 2945, 97 L. Ed. 2d 389 (1987), and <u>Employees of Dept. of Public Health and Welfare v. Department of Public Health and Welfare of Mo.</u>, 411 U.S. 279, 290-294, 93 S. Ct. 1614, 1620-1622, 36 L. Ed. 2d 251 (1973)).

It is therefore axiomatic that "[a] State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation."  <u>VOPA v. Stewart</u>, 563 U.S. at 253, 131 S. Ct. at 1638(citing <u>College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.</u>,

527 U.S. 666, 675-676, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999)).  "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  Id. Stated otherwise, the Constitution does not provide for federal jurisdiction over suits against nonconsenting States.  Nevada Department of Human Resources v. Hibbs, 538 U.S. 721, 726, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-268, 117 S. Ct. 2028, 2033, 138 L. Ed. 2d 438 (1997). It should be noted that Pennsylvania has **not** waived its Eleventh Amendment immunity except in 9 instances which are delineated in 42 Pa.C.S. §8522.[3]

---

[3]   Indeed, 1 Pa.C.S. §2310 states:

Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.  When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

Under 42 Pa.C.S. §8522,

**(a) Liability imposed. -**

The General Assembly, pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability. -**

The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

**(1) Vehicle liability. -**

The operation of any motor vehicle in the possession or control of a Commonwealth party.  As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

**(2) Medical-professional liability. -**

Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

**(3) Care, custody or control of personal property. -**

The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

**(4) Commonwealth real estate, highways and sidewalks. -**

A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

**(5) Potholes and other dangerous conditions. -**

A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition.  Property damages shall not be recoverable under this paragraph.

**(6) Care, custody or control of animals. -**

The care, custody or control of animals in the possession or control of a Commonwealth party, including but not limited to police dogs and horses and animals incarcerated in Commonwealth agency laboratories. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.

8

The Eleventh Amendment bar also remains in effect when State officials are sued for damages in their official capacity. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985).  This is because "official-capacity suits

---

**(7) Liquor store sales.** -

The sale of liquor at Pennsylvania liquor stores by employees of the Pennsylvania Liquor Control Board created by and operating under the act of April 12, 1951 (P.L. 90, No. 21), known as the "Liquor Code," if such sale is made to any minor, or to any person visibly intoxicated, or to any insane person, or to any person known as an habitual drunkard, or of known intemperate habit.

**(8) National Guard activities.** -

Acts of a member of the Pennsylvania military forces.

**(9) Toxoids and vaccines.** -

The administration, manufacture and use of a toxoid or vaccine not manufactured in this Commonwealth under the following conditions:

**(I)** The toxoid or vaccine is manufactured in, and available only from, an agency of another state.

**(ii)** The agency of the other state will not make the toxoid or vaccine available to private persons or corporations, but will only permit its sale to another state or state agency.

**(iii)** The agency of the other state will make the toxoid or vaccine available to the Commonwealth only if the Commonwealth agrees to indemnify, defend and save harmless that agency from any and all claims and losses which may arise against it from the administration, manufacture or use of the toxoid or vaccine.

**(iv)** A determination has been made by the appropriate Commonwealth agency, approved by the Governor and published in the Pennsylvania Bulletin, that the toxoid or vaccine is necessary to safeguard and protect the health of the citizens or animals of this Commonwealth.

**(v)** The toxoid or vaccine is distributed by a Commonwealth agency to qualified persons for ultimate use.  The Commonwealth shall make the toxoid or vaccine available to a qualified person only if the person agrees to indemnify, defend and save harmless the Commonwealth from any and all claims and losses which may arise against the Commonwealth from the manufacture, distribution, administration or use of the toxoid or vaccine.

'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" <u>Id</u>, 473 U.S. at 165, 105 S. Ct. at 3105(quoting <u>Monell v. New York City Dept. Of Social Services</u>, 436 U.S. 658, 690, n. 55, 98 S. Ct. 2108, 2035, n. 55, 56 L. Ed. 2d 611 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  <u>Id</u>.  Nor does Section 1983 provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties unless (again), the State has waived its immunity or unless Congress has exercised its power under §5 of the Fourteenth Amendment to override that immunity.   <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309-2310, 105 L. Ed. 2d 45 (1989).  This is because a State is not a "person" within the meaning of §1983.  <u>Id</u>.  On the other hand, personal capacity suits *will* lie against state officials under §1983 because such officials are individual "persons" and therefore subject to suit.  <u>Melo v. Hafer</u>, 912 F.2d 628, 635 (3d Cir. 1990).[4]   The Pennsylvania State Police has repeatedly been found to be an arm of the Commonwealth of Pennsylvania and, as such, has been held to be entitled to Eleventh Amendment

---

[4]   To be sure, in a personal-capacity suit, a plaintiff seeks to impose personal liability upon a government official for actions he takes under color of state law.  <u>See</u>, <u>Kentucky v. Graham</u>, <u>supra</u>.

immunity.  Mitchell v. Miller, 884 F. Supp. 2d 334, 366 (W.D. Pa. 2012) Stine v. Pennsylvania State Police, Civ. A. No. 1:09-CV-0944, 2010 U.S. Dist. LEXIS 116402 at *12 (M.D. Pa. Nov. 2, 2010); Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement, 108 F. Supp. 2d 460, 465 (E.D. Pa. 2000).

In application of these principles to the complaint now before us, although Plaintiff specifically alleges that she is suing Donika Plyku and Doshi Prifti as individuals, she avers only that she "sues Defendants Pa State Police Troop K, Lt. Eric Turk, Captain James Raykovitz, Trooper Matthew Gibson, Unidentified Trooper #1 and Unidentified Trooper #2." (Complaint, ¶11).  Inasmuch as the claims which are being asserted here fall within any of the enumerated exceptions to sovereign immunity set forth in §8522(b), it is clear that Troop K of the Pennsylvania State Police is not a proper defendant under the precedent discussed above nor are the individual troopers and state police officers to the extent that Plaintiff sues them in their official capacities.  Accordingly, Plaintiff's claims against the state police and any official capacity claims against Turk, Raykovitz, Gibson and the unidentified troopers are properly dismissed with prejudice.

*B. Plaintiff's Due Process Claims*

In Counts I, II, III, and V, Plaintiff purports to raise claims against all of the defendants under the Fourth and

Fourteenth Amendments for violations of her rights to be free from unreasonable home entries, searches and seizures, to protection from criminal and unlawful destruction of her property and deprivation of her rights to substantive and procedural due process of law.  The Commonwealth Defendants move to dismiss any claims for violation of Plaintiff's substantive and/or procedural due process rights.  Again, we are constrained to agree and these claims shall be dismissed with prejudice.

"The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Ker v. California, 374 U.S. 23, 30, 83 S. Ct. 1623, 1628, 10 L. Ed. 2d 726 (1963), ... "protects the people from unreasonable searches and seizures of their persons, houses, papers, and effects."  Soldal v. Cook County, Illinois, 506 U.S. 56, 61, 62, 113 S. Ct. 538, 543, 544, 121 L. Ed. 2d 450 (1992).  More particularly, the Amendment reads as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The "central requirement" of the Fourth Amendment is one of reasonableness and the "chief evil" against which the Fourth Amendment is directed is the warrantless entry and search of the home.  Illinois v. McArthur, 531 U.S. 326, 330, 331, 121 S. Ct. 946, 949, 950, 148 L. Ed. 2d 838 (2001); Payton v. New York, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379-1380, 63 L. Ed. 2d 639

(1980).   A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed; a "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  Soldal, 506 U.S. at 63, 113 S. Ct. at 544(quoting United States v. Jacobsen, 466 U.S. 109, 113, 104 S. Ct. 1652,1656, 80 L. Ed. 2d 85 (1984)).

The Fourteenth Amendment, in turn, states the following in relevant part at Section 1:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Notwithstanding the breadth of this language, "it is well settled that only a limited range of interests falls within this provision."  Hewitt v. Helms, 459 U.S. 460, 466, 103 S. Ct. 864, 868, 74 L. Ed. 2d 675 (1983) *overruled in part on other grounds*, Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).  Indeed, the guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials, nor does the due process guarantee entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.  County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d

13

1043 (1998); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348, 106 S. Ct. 668, 670, 88 L. Ed. 677 (1986).  Rather, it has been noted that substantively "the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression," and the "most familiar of the substantive liberties protected by the Fourteenth Amendment are those recognized by the Bill of Rights."  <u>Collins v. City of Harker Heights, Tex.</u>, 503 U.S. 115, 126, 112 S. Ct. 1061, 1069, 117 L. Ed. 2d 261 (1992); <u>Planned Parenthood v. Casey</u>, 505 U.S. 833, 847, 112 S. Ct. 2791, 2804, 120 L. Ed.2d 674 (1992).

However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" <u>Stop the Beach Renourishment, Inc. v. Florida Dept. Of Environmental Protection</u>, 560 U.S. 702, 721, 130 S. Ct. 2592, 2606, 177 L. Ed. 2d 184 (2010)(quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994) and <u>Graham v.  Connor</u>, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).  Claims for unlawful entry to a home, and search and seizure of a person or property have long been and are properly analyzed under the Fourth - not the Fourteenth Amendment. <u>See</u>, <u>Albright</u>, and <u>Payton</u>, both <u>supra</u>.;

Dempsey v. Bucknell University, No. 15-1328, 2016 U.S. App. LEXIS
15334 (3d Cir. Aug. 22, 2016); United States v. White, 748 F.3d
507, 510-511 (3d Cir. 2014).

In this case, it is again murky at best as to whether or not
Plaintiff is trying to assert claim(s) for violation(s) of
substantive due process under the Fourteenth Amendment in Counts
I, II, III and V.  Given that the gravamen of her claim(s) under
the facts alleged is the purported unconstitutional breaking and
entering of her home and the seizure of the items of personal
property listed, it is clear that the Fourth Amendment alone, as
applied to actors of the Commonwealth of Pennsylvania through the
Fourteenth, provides the conduit for the relief which is being
sought.  For this reason, to the extent that substantive due
process violations are being raised here, they are likewise
dismissed with prejudice.

In addition to asserting a violation of her substantive due
process rights, Plaintiff also avers in Count V that her
procedural due process rights were violated in that the
defendants' deprived her of the use of the personal property
which they removed from her residence and/or damaged or destroyed
in the process of breaking into her home.

"It is elementary that procedural due process is implicated
only where someone has claimed that there has been a taking or
deprivation of a legally protected liberty or property interest,"

and that "possessory interests in property invoke procedural due process protections." Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)(citing Board of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 12701, 33 L. Ed. 2d 548 (1972) and Fuentes v. Shevin, 407 U.S. 67, 87, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). "Fundamentally, due process requires notice and an opportunity to be heard," which hearing must be "at a meaningful time and in a meaningful manner." Mancini v. Northampton County, Nos. 15-2790, 15-2873, 15-3012, 2016 U.S. App. LEXIS 16568 at *16-*17 (Sept. 9, 2016)(quoting Mathews v. Eldridge, 424 U.S. 319, 333, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).  "In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due,'" with the result that "there are, of course, some situations in which a post-deprivation hearing will satisfy due process requirements." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 and note 7 (1985)(quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972) and citing Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S. Ct. 870, 94 L. Ed. 1088 (1950)).

Indeed, the Supreme Court has held unauthorized intentional or negligent deprivations of property do not violate the Due Process Clause if adequate state post-deprivation remedies are available. Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194,

3204, 82 L. Ed. 2d 393 (1984).  Stated otherwise, *prior* notice is not "absolutely necessary so long as other procedures guarantee protection against erroneous or arbitrary seizures." Abbott, supra.(citing Mitchell v. W.T. Grant Co., 416 U.S. 600, 605-06, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974) and Finberg v. Sullivan, 634 F.2d 50, 58 (3d Cir. 1980)(en banc).

As the above cases suggest, in determining "whether an individual has been deprived of his property without due process 'it is necessary to ask what process the State provided, and whether it was constitutionally adequate.'" Revell v. Port Authority of New York and New Jersey, 598 F.3d 128, 138 (3d Cir. 2010), *cert. denied*, 562 U.S. 1178, 131 S. Ct. 995, 178 L. Ed. 2d 825 (2011)(quoting Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).  "Although a pre-deprivation hearing is generally required before a state seizes a person's property, 'in some circumstances, the Court has held that a statutory provision for a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process.'" Id,(quoting Burch, 494 U.S. at 128).  Both the U.S. Supreme Court and the Third Circuit Court of Appeals have held that the process available in a state tort claim for conversion is adequate to remedy a plaintiff's property deprivation and that a plaintiff must have taken advantage of the processes that are available in order to state a claim for failure to provide due

process.  Willard v. Pennsylvania Society for the Prevention of
Cruelty to Animals, No. 12-2288, 2013 U.S. App. LEXIS 10643, 525
Fed. Appx. 217, 221 (3d Cir. 2013)(citing Parratt v. Taylor, 451
U.S. 527, 543, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), Alvin v.
Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) and DeBlasio v. Zoning
Board of Adjustment for Township of West Amwell, 53 F.3d 592, 597
(3d Cir. 1995)).

Here, while the complaint is silent as to what processes Ms.
Akl pursued in recovering her property, she recites in her
opposition brief that she "spoke with numerous individuals at the
Pennsylvania State Police Troop K barracks, sought to file an
official complaint, and sought to file criminal charges for the
violations, but as of the current date no action has been taken
by the Pennsylvania State Police." (Complaint, p. 9).  Although
she avers that "[a]s it relates to the violation of Plaintiff's
civil rights, Plaintiff did in fact follow all processes
available to no avail," it is clear that she has not availed
herself of those tort and other remedies available under
Pennsylvania law, such as filing civil actions for replevin
and/or conversion which have been recognized as affording
appropriate remedial procedures.  See, e.g., Universal Premium
Acceptance Corp. v. York Bank & Trust Co., 69 F.3d 695 (3d Cir.
1995); International Electronics Co. v. N.S.T. Metal Products
Co., 370 Pa. 213, 88 A.2d 40 (1952); Fenton v. Balick, 821 F.

Supp. 2d 755 (E.D. Pa. 2011).  Accordingly, Plaintiff has failed
to state a cause of action for violation of her rights to
procedural due process and Count V is therefore dismissed in its
entirety, albeit without prejudice as to the procedural component
given that we cannot definitively find at this time that
Plaintiff cannot possibly re-plead a plausible claim.

   *C. Count VI*

   In Count VI of the Complaint, Plaintiff again appears to be
trying to plead a cause of action for violation of her
substantive and procedural due process rights for Lieutenant
Turk's alleged failure to comply with her request to

> "fully investigate and charge Trooper Gibson and the two
> unidentified state troopers with conspiring with Defendants
> Plyku and Prifti by assisting Plyku and Prifti in their
> criminal conduct and/or be properly disciplined for their
> improper and illegal conduct."

(Plaintiff's Complaint, ¶60).

   "A bad police investigation is actionable under section 1983
only if it results in a deprivation of some right." Jacobs v.
Palmer, Civ. A. No. 14-5797, 2015 U.S. Dist. LEXIS 28853 at *18,
n. 6 (E.D. Pa. March 10, 2015)(quoting Martin v. City of Reading,
No. 12-CV-3665, 2013 U.S. Dist. LEXIS 141152, 2013 WL 5429358 at
*8 - 9 (E.D. Pa. Sept. 30, 2013)).  And there is no
constitutional right to the investigation or prosecution of
another, Sanders v. Downs, 420 Fed. Appx. 175, 180 (3d Cir.
2011)(citing, *inter alia*, Linda R.S. v. Richard D., 410 U.S. 614,

619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973)).  Again, "'[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it; [h]e must instead have a legitimate claim of entitlement to it.'" Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796, 2803, 162 L. Ed. 2d 658 (2005)(quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).  Insofar as Plaintiff here does not have a legitimate claim of entitlement to a full investigation of the state troopers who were allegedly involved or to have those troopers "properly disciplined," Count VI cannot stand and is properly dismissed with prejudice.

   *D.  Larceny - Count VII*

   In Count VII of the complaint, Plaintiff asserts by allegedly assisting Defendants Plyku and Prifti in illegally entering her residence and unlawfully removing her personal property without her permission, Trooper Gibson and the unidentified two troopers committed larceny.

   Since 1973, the crime of "larceny" has been subsumed within the definition of "theft."  18 Pa. C. S. A. §3902.[5]  Under 18 Pa.

---

   [5]  As noted in the Comment to Section 3902,

   The crime of "theft" is intended to embrace the offenses heretofore known as larceny, embezzlement, false pretense, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like.  It is intended by this subsection and this article to eliminate the technical distinctions between larceny, fraudulent conversion, etc. The basic philosophy adopted is that if a person takes something which does not

C. S. A. §3921(a), "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof."  At common law, larceny consisted of the "taking and carrying away of the personal property of another with the mind of a thief, that is, with the specific intent to deprive the owner permanently of his property."  Commonwealth v. Nace, 222 Pa. Super. 329, 331, 295 A.2d 87, 89 (1972)(quoting Hilliard Lumber Co. v. Harleysville Co., 175 Pa. Super. 94, 96, 103 A.2d 436, 437 (1954).  Regardless of definition, there is no private cause of action for alleged theft crimes under Pennsylvania law.  Bullock v. Bimbo Bakers USA, Inc., No. 10-3276, 414 Fed. Appx. 470, 473, 2011 U.S. App. LEXIS 3534, *6 (3d Cir. Feb. 22, 2011). Accordingly, Count VII is likewise dismissed with prejudice.

   E.  Claims Against Defendants Turk and Raykovitz

     Plaintiff alleges that Captain Raykovitz and Lieutenant Turk are the Pennsylvania State Police commanding officer and station commander, respectively, of Troop K, Delaware County Barracks, and that, like the uniformed troopers who accompanied Defendants Prifti and Plyku to Plaintiff's residence, they too failed to make any attempt to contact her to advise that Prifti, Plyku and the uniformed officers were going to break into Plaintiff's

---

          belong to him, this constitutes theft.  It is contemplated that the
          indictment will state the facts justifying the conclusion that a theft
          was committed. ...

property.  (Complaint, ¶s 4, 5, 17).  Aside from alleging this
failure, Plaintiff goes on to include Lt. Turk in her assertion
that "as a result of their concerted unlawful entry into the
residence of Plaintiff" he (along with Trooper Gibson and the two
unidentified troopers) "intentionally, or with deliberate
indifference and callous disregard of [her] rights, deprived
[her] of her right to protection from unlawful search and seizure
of [her] residence and property therein" for which she demands
judgment jointly and severally for compensatory and punitive
damages in excess of $150,000.  (Complaint, ¶s 40-42).  These
averments are, without more, insufficient to state viable claims
against these defendants.

It is well-recognized that government officials may not be
held liable for the unconstitutional conduct of their
subordinates under a theory of respondeat superior.  Ashcroft v.
Iqbal, 556 U.S. at 676, 129 S. Ct. at 1948.  Instead, the
imposition of liability in an action under §1983 and the other
civil rights statutes depends on the plaintiff showing that the
defendant had personal involvement in the alleged wrongs and thus
a plaintiff must plead that each government-official defendant,
through the official's own individual actions, violated the
Constitution.  Chavarriaga v. N.J. Department of Corrections, 806
F.3d 210, 222 (3d Cir. 2015)(citing Parratt v. Taylor, 451 U.S.
at 537, n.3, 101 S. Ct. at 1913, n.3); Bistrian v. Levi, 696 F.3d

352, 366 (3d Cir. 2012).   In other words, a plaintiff must therefore demonstrate a defendant's "personal involvement in the alleged wrongs" and may do so by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct.  Chavarriaga, supra, (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive.  Id; Baker v. Monroe Township, 50 F.3d 1186, 1194 (3d Cir. 1995).

As noted, the Plaintiff here has failed to allege sufficient facts from which it may be found that Lt. Turk and Capt. Raykovitz had actual knowledge of the alleged actions of their subordinate officers nor is there any indication that either of these defendants themselves had some personal involvement in the activities that were taking place at Plaintiff's residence.  So saying, Lt. Turk and Capt. Raykovitz are dismissed as defendants from Plaintiff's Complaint without prejudice (given that we cannot find at this juncture that Plaintiff cannot possibly re-plead viable claims against them).

For all of the foregoing reasons, the Motion of the Commonwealth/State Trooper Defendants to Partially Dismiss the Plaintiff's Complaint is granted.  An Order follows.

23